IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | : |
| | : Case No. 1:21-cr-12 |
| Plaintiff, | : |
| | : Judge Susan J. Dlott |
| v. | : |
| | : **Order Denying Motion to Dismiss the** |
| Niraj Patel, | : **Superseding Indictment** |
| | : |
| Defendant. | : |
| | : |

This matter is before the Court on Defendant Niraj Patel's Motion to Dismiss the Superseding Indictment. (Doc. 26.) The Government filed a Response in Opposition, to which Defendant filed a Reply. (Docs. 27, 28.) For the reasons that follow, Defendant's Motion will be **DENIED**.

I.     **BACKGROUND**

    **A. Facts**

As alleged in the Superseding Indictment, Defendant was employed by Academy Health Services, Inc. ("Academy"), a home health care provider. (Doc. 18 at PageID 122.) Academy established the AHS 401(k) Plan ("Plan"), an employee welfare benefit plan, of which Defendant is a participant. (*Id.*) The Plan is sponsored by Acme Health Services, Inc. ("Acme"). (*Id.*) Latitude Retirement Services ("Latitude") serves as the third-party administrator for the Plan, and Mid Atlantic Trust Company ("Mid Atlantic") serves as the asset custodian for the Plan. (*Id.*) Vijay Patel and Jack Patel serve as the trustees ("Trustees") for the Plan. (*Id.*)

In 2019, Defendant submitted to Latitude two hardship withdrawal applications to obtain disbursements from his 401(k) account: one in June 2019 and one in October 2019. (*Id.* at

PageID 123–124.) The applications stated the funds would be used to purchase Defendant's primary residence and pay medical expenses, both of which were permissible reasons for a hardship withdrawal under the Plan. (*Id.* at PageID 123; Doc. 26-1 at PageID 210–211.) Both applications were processed and resulted in Mid Atlantic disbursing funds to Defendant's bank account. (Doc. 18 at PageID 123–124.) The Government alleges Defendant used the funds for impermissible purposes such as personal expenses, and therefore falsely represented the purpose of the withdrawals on the applications. (*Id.* at PageID 123.) Further, the Government alleges Defendant forged Trustee Jack Patel's signature on the applications. (*Id.* at PageID 125.)

### B. Procedural Posture

On March 11, 2021, Defendant was indicted for two counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of theft or embezzlement from an employee benefit plan in violation of 18 U.S.C. § 664, and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (Doc. 3.) On August 3, 2021, Defendant filed a Motion to Dismiss. (Doc. 17.) On August 4, 2021, a grand jury issued a Superseding Indictment and Defendant is now charged with two counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of making false statements and concealing facts in documents required by the Employee Retirement Income Security Act ("ERISA") in violation of 18 U.S.C. § 1027, and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (Doc. 18.) In light of the Superseding Indictment, the Court denied Defendant's initial Motion as moot.[1] (Doc. 23.) Defendant then filed the instant

---

[1] After the Court denied Defendant's initial Motion to Dismiss, Defendant filed an Unopposed Motion for Reconsideration requesting the Court take the matter under further advisement until such time as Defendant's counsel had an opportunity to review the Superseding Indictment and determine if a renewed motion to dismiss was appropriate. (Doc. 22.) The Court granted Defendant's Motion for Reconsideration. (Doc. 24.) Given the filing of the instant Motion to Dismiss the Superseding Indictment, the Court **REAFFIRMS** its prior ruling denying Defendant's initial Motion to Dismiss (Doc. 17) as moot.

2

Motion on November 18, 2021, to which the Government filed a Response in Opposition and Defendant filed a Reply. (Docs. 26, 27, 28.) This matter is now ripe for the Court's review.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Criminal Procedure 12, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A motion to dismiss is usually capable of determination before trial "if it involves questions of law instead of questions of fact on the merits of criminal liability." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). When ruling on a motion to dismiss, a court must "view the Indictment's factual allegations as true, and must determine only whether the Indictment is valid on its face[]." *United States v. Edwards*, 291 F. Supp. 3d 828, 831 (S.D. Ohio 2017) (cleaned up); *see also United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("[C]ourts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based."). The Sixth Circuit has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

## III. LAW AND ANALYSIS

### A. Wire Fraud

Counts I and II of the Superseding Indictment charge Defendant with wire fraud in violation of 18 U.S.C. § 1343. A conviction of wire fraud requires that the Government show (1) the defendant devised or willfully participated in a scheme to defraud, (2) he used an interstate wire communication to further the scheme, and (3) he intended to deprive someone of money or

3

property. *United States v. Olive*, 804 F.3d 747, 753 (6th Cir. 2015). Defendant argues he cannot, as a matter of law, be convicted of wire fraud because did not deprive a victim of money or property. Section 4.4(a) of the Plan document provides that "[t]he Administrator shall establish and maintain an account in the name of each Participant." (Doc. 26-1 at PageID 188.) Section 4.2(c) further provides that Defendant's "Elective Deferral Account shall be fully Vested at all times and shall not be subject to Forfeiture for any reason." (*Id.* at PageID 186.) Given these sections in the Plan document, Defendant avers he was the owner of the funds he obtained as a result of the hardship withdrawal applications and thus he did not deprive another of their property interest. In response, the Government notes section 4.2(d) of the Plan document prohibits distributions from a participant's Elective Deferral Account "except as authorized by other provisions of this Plan." (*Id.* at PageID 186.) The Government also contends that despite Defendant's account being fully vested, the funds Defendant withdrew are Plan assets rather than assets owned by Defendant.

The Court is aware of only one other federal court that has addressed this issue. In *United States v. Barringer*, the defendant was convicted by a jury of wire fraud, among other charges, for transmitting a fraudulent hardship withdrawal form to her company's 401(k) plan provider to obtain a distribution from her account. 481 F. Supp. 3d 596, 599, 601 (W.D. Va. 2020). The court granted the defendant's motion for judgment of acquittal on the wire fraud conviction, finding the government failed to prove "the defendant's deceit deprived another of a property interest." *Id.* at 602. The plan provider's contractual interest did not qualify as a property interest for purposes of 18 U.S.C. § 1343,[2] and although it was "possible" the trustee

---

[2] The government's witness did not claim that the plan provider was the victim of a fraud nor suffered any loss due to the defendant's misrepresentations contained in the hardship withdrawal forms. *Id.* at 603.

4

may have held a property interest in the 401(k) plan, at trial the government failed to introduce any evidence as to that relationship. *Id.* at 603.

While the facts in *Barringer* are directly comparable to the facts of this case, the difference in procedural posture is significant as the court in *Barringer* ruled after the evidence was submitted at trial. Here, the Government intends to present evidence at trial regarding the Plan document and "the relationship between the trustee/Plan administrator/asset custodian, Plan, and assets as well as evidence of the misrepresentations made to the trustee/Plan administrator/[]asset custodian." (Doc. 27 at PageID 237, 239.) The Government contends this evidence will demonstrate that the funds Defendant obtained were Plan assets in which the Trustees had a property interest. Whether the Government's evidence will support the wire fraud charges is a question of fact for the jury. Accordingly, Defendant's Motion to Dismiss as to the wire fraud charges is denied.

### B. False Statements and Concealment of Facts in Documents Required by ERISA

Counts III and IV of the Superseding Indictment charge Defendant with violating 18 U.S.C. § 1027 for making a false statement on, or concealing, covering up, or failing to disclose necessary facts on, his hardship withdrawal applications.[3] 18 U.S.C. § 1027 provides:

> Whoever, in any document required by title I of . . . [ERISA] to be published, or kept as part of the records of any employee welfare benefit plan or employee pension benefit plan, or certified to the administrator of any such plan, makes any false statement or representation of fact, knowing it to be false, or knowingly conceals, covers up, or fails to disclose any fact that disclosure of which is required by such title or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by such title to be published or any information required by such title to be certified, shall be fined under this title, or imprisoned not more than five years, or both.

---

[3] Defendant argues that 18 U.S.C. § 1027 is usually enforced against employers and plan administrators rather than plan participants. The Sixth Circuit has held, however, that "the conduct of fund participants is within the ambit of the statute." *United States v. Bartkus*, 816 F.2d 255, 257 (6th Cir. 1987).

5

18 U.S.C. § 1027. Thus, the elements of said offense are (1) knowingly, (2) making a false statement or concealing, covering up, or failing to disclose a fact, (3) in a document required by ERISA. *United States v. Blazer*, No. 3:13CR39, 2013 WL 5937344, at *1 (N.D. Ohio Sept. 11, 2013).

Defendant claims Counts III and IV should be dismissed because hardship withdrawal applications are not required by ERISA to be kept as part of the records of an employee welfare benefit plan.[4] ERISA's reporting and disclosure framework requires an employee welfare benefit plan to publish an annual report, Form 5500, incorporating a financial statement that includes disbursements from the plan. 29 U.S.C. § 1023. ERISA also requires that certain records serving as the basis for the Form 5500 be maintained. 29 U.S.C. § 1027, entitled "Retention of records," provides:

> Every person subject to a requirement to file any report . . . shall maintain a copy of such report and records on the matters of which disclosure is required which will provide in sufficient detail the necessary basic information and data from which the documents thus required may be verified, explained, or clarified, and checked for accuracy and completeness, and shall include vouchers, worksheets, receipts, and applicable resolutions . . . .

29 U.S.C. § 1027. Defendant argues a hardship withdrawal application is not necessary for, or even supportive of, a Form 5500 because unlike a canceled check, payment receipt, or account statement, a hardship withdrawal application says nothing about whether Latitude actually disbursed funds from Defendant's 401(k) account.

Case law on this issue is admittedly sparse, but the Sixth Circuit's decision in *United States v. Bartkus* is instructive. 816 F.2d 255 (6th Cir. 1987). There, the defendant had sought and received a reimbursement from his union's welfare fund for his wife's medical expenses

---

[4] The Government does not argue that hardship withdrawal applications are required to be published or certified to the Plan administrator.

6

although the medical expenses had been completely covered by his wife's employer-provided health insurance. *Id.* at 256–257. The defendant was convicted under 18 U.S.C. § 1027 for false statements and concealment of fact on a hospital invoice and "coordination of benefits" form on which the defendant falsely claimed his wife was unemployed and did not have any other source of health insurance coverage.[5] *Id.* The Sixth Circuit affirmed the defendant's conviction, holding that the documents at issue were required to be retained under ERISA. *Id.* at 258. The hospital invoice qualified as a "receipt" under 29 U.S.C. § 1027, and the coordination of benefits form provided essential information for verifying the defendant's eligibility to receive health insurance payments from his union's welfare fund. *Id.*; *see also United States v. Sarault*, 840 F.2d 1479 (9th Cir. 1988) (holding attorney's letter to fund trustees that misrepresented insurance carrier's reserves set aside to pay insurance claims was a document required by ERISA to be retained).

The Court finds that the hardship withdrawal applications are documents required by ERISA to be retained as records of the Plan. The Plan's Form 5500 is required to contain a statement of disbursements from the Plan. 29 U.S.C. § 1023(b)(1), (3)(b). While Defendant is correct that the hardship withdrawal applications, standing alone, do not indicate whether a hardship disbursement occurred, the applications nonetheless provide essential information because, as relevant here, the Plan only permitted hardship withdrawals for medical expenses or the purchase of a principal residence. (Doc. 26-1 at PageID 210.) Therefore, similar to the coordination of benefits form in *Bartkus*, the hardship withdrawal applications contain information necessary to "verif[y], explain[], or clarify[], and check[] for accuracy and

---

[5] The union's welfare fund required the defendant to initially seek payment for his wife's medical expenses from her employer. Once the limits of that coverage were exhausted, the fund would then provide supplemental payments to satisfy any outstanding unpaid balance. *Id.* at 256.

7

completeness" the statement of disbursements contained in the Plan's Form 5500 and Defendant's eligibility to receive the disbursements.[6] 29 U.S.C. § 1027. The plain language of 29 U.S.C. § 1027 does not contradict such a finding. The statute's use of the nonlimiting term "shall include" and reference to nonfinancial documents such as resolutions envision a variety of documents that could fall within the statute's ambit.

Relying on decisions from other circuits, Defendant also claims the Government must show he knew the false statement or concealment of fact was made in a document required to be kept under ERISA. In *United States v. Palumbo Bros., Inc.*, the Seventh Circuit held, in relevant part, that to establish a violation of 18 U.S.C. § 1027 the Government must show the defendant had "knowledge that the false statement or concealment was made in a document required to be published." 145 F.3d 850, 874 (7th Cir. 1998). And in *United States v. Cacioppo*, the Eighth Circuit held the Government must "prove both that the defendant knowingly concealed, covered up, or failed to disclose a fact that she was required to disclose and that she knew that she was obliged to disclose it." 460 F.3d 1012, 1019 (8th Cir. 2006) (cleaned up).

The Court is not persuaded by Defendant's cited authority. In analyzing the mens rea requirement of 18 U.S.C. § 1027, the court in *Cacioppo* distinguished between the statute's false statement prong and concealment prong. The court concluded that the former criminalizes making a false statement knowing it to be false, whereas the latter requires both the concealment to be done knowingly and the defendant have knowledge that she was required to disclose the concealed fact. *Id.* at 1016–1017, 1019. Here, Defendant does not specify under which prong he

---

[6] Defendant further argues a hardship withdrawal application is not required under ERISA to be retained because section 7.1(d) of the Plan document expressly disclaims any duty on behalf of the Trustees to verify the appropriateness of a hardship withdrawal request. This fact does not alter the Court's conclusion because regardless of whether the Trustees had any such duty, the hardship withdrawal applications still constitute documents supporting the disbursements to Defendant and are therefore required under ERISA to be retained.

seeks to dismiss Counts III and IV. Further, the *Cacioppo* court clarified that its decision did not imply a defendant must know that 18 U.S.C. § 1027 exists and that she is violating said statute. *Id.* at 1020. "We hold only that the defendant must have known that she was required to disclose the information she allegedly concealed . . . [O]ur decision concerning . . . the mens rea requirement in no way affects how the Government can go about proving that the required mens rea exists." *Id.* at 1021. Lastly, the Sixth Circuit has expressed no such requirement. Rather, the Sixth Circuit has upheld jury instructions stating that 18 U.S.C. § 1027's knowledge requirement is satisfied if the defendant acted knowingly and willfully in regards to a false statement or concealment of fact. *See United States v. Krimsky*, 230 F.3d 855, 859 (6th Cir. 2000); *United States v. S & Vee Cartage Co., Inc.*, 704 F.2d 914, 918–919 n. 1 (6th Cir. 1983).

The Superseding Indictment alleges Defendant "did make false statements and representations of fact, knowing the same to be false, and did knowingly conceal, cover up and fail to disclose facts" in a document required to be kept under ERISA. (Doc. 18 at PageID 124.) This language is sufficient under the law of this Circuit to survive a motion to dismiss. Whether Defendant acted with the requisite mens rea remains to be determined by a jury. Accordingly, Defendant's Motion is denied as to Counts III and IV.

### C. Aggravated Identity Theft

Lastly, Defendant moves to dismiss Counts V and VI of the Superseding Indictment charging him with aggravated identity theft in violation of 18 U.S.C. § 1028A on the grounds that Counts I through IV are legally insufficient, and therefore, no valid predicate felony charges are present. Given that the Court denied Defendant's Motion as to the wire fraud and ERISA fraud charges, Defendant's Motion is denied as to Counts V and VI.

9

IV. CONCLUSION

For the reasons explained herein, Defendant's Motion to Dismiss the Superseding Indictment (Doc. 26) is **DENIED**.

**IT IS SO ORDERED**.

_____
Judge Susan J. Dlott
United States District Court